UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

ELIZABETH ROSE FREEMAN,

Plaintiff,

v.

NANCY A. BERRYHILL, Acting Commissioner of the Social Security Administration,

Defendant.

CASE NO. 2:16-cv-01826 JRC

ORDER ON PLAINTIFF'S COMPLAINT

This Court has jurisdiction pursuant to 28 U.S.C. § 636(c), Fed. R. Civ. P. 73 and Local Magistrate Judge Rule MJR 13 (*see also* Notice of Initial Assignment to a U.S. Magistrate Judge and Consent Form, Dkt. 5; Consent to Proceed Before a United States Magistrate Judge, Dkt. 7). This matter has been fully briefed. *See* Dkt. 11, 12, 13.

After considering and reviewing the record, the Court concludes that the ALJ erred when evaluating the medical evidence. Although the ALJ found that examining doctor, Dr. Colby, relied heavily on plaintiff's self-reports, the ALJ did not cite any

evidence from the record substantiating this finding. Rather, the record reveals that Dr. Colby performed a formal mental status examination, and explicitly indicated reliance on the objective evidence gleaned therefrom when providing opinions regarding plaintiff's demonstrated abilities, which were not within normal limits. This is not harmless error.

Therefore, this matter is reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) to the Administration for further administrative proceedings consistent with this Order.

BACKGROUND

Plaintiff, ELIZABETH ROSE FREEMAN, was born in 1969 and was 43 years old on the amended alleged date of disability onset of September 15, 2012. *See* AR. 44, 233-35, 236-41. Plaintiff completed one and one-half years of high school and has not obtained a GED. AR. 49. Plaintiff has work experience as a home health aide and certified nursing assistant. AR. 274-77. Plaintiff last worked as a home health aide but it ended when "there was an issue with a client and apparently did not follow a direct order which I do not recall hearing." AR. 49.

According to the ALJ, plaintiff has at least the severe impairments of "fibromyalgia; lumbar degenerative disc disease; obesity; chronic pain disorder; affective disorder; anxiety disorder; and personality disorder (20 CFR 404.1520(c) and 416.920(c))." AR. 23.

At the time of the hearing, plaintiff was living with her adult daughter and her wife. AR. 48.

PROCEDURAL HISTORY

Plaintiff's applications for disability insurance benefits ("DIB") pursuant to 42 U.S.C. § 423 (Title II) and Supplemental Security Income ("SSI") benefits pursuant to 42 U.S.C. § 1382(a) (Title XVI) of the Social Security Act were denied initially and following reconsideration. *See* AR. 20. Plaintiff's requested hearing was held before Administrative Law Judge Stephanie Martz ("the ALJ") on October 9, 2014. *See* AR. 41-68. On April 2, 2015, the ALJ issued a written decision in which the ALJ concluded that plaintiff was not disabled pursuant to the Social Security Act. *See* AR. 17-40.

In plaintiff's Opening Brief, plaintiff raises the following issues: (1) Whether the ALJ erred by failing to properly evaluate the medical opinion evidence of record; and (2) Whether the ALJ's light RFC is supported by substantial evidence. *See* Dkt. 11, p. 1.

STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (*citing Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)).

DISCUSSION

**(1) Whether the ALJ erred by failing to evaluate properly the medical opinion evidence of record.**

Among other things, plaintiff contends that the ALJ erred when evaluating the contradicted medical opinion evidence provided by plaintiff's examining doctors.

Defendant contends that there is no error; however, defendant simply reiterates in a conclusory manner the ALJ's rationale for failing to credit fully these opinions and provides no analysis. *See* Dkt. 12, p. 4 ("The ALJ permissibly discounted Dr. Epp's opinion and Dr. Colby's opinion because they were premised on the self-reporting of a less than credible claimant 'both examiners relied heavily on the claimant's subjective report, which is not fully credible'"). Neither the ALJ, nor defendant, offers any evidence from the record demonstrating that the examining doctors relied heavily on plaintiff's subjective report.

When an opinion from an examining doctor is contradicted by other medical opinions, the examining doctor's opinion can be rejected only "for specific and legitimate reasons that are supported by substantial evidence in the record." *Lester v. Chater,* 81 F.3d 821, 830-31 (9th Cir. 1996) (citing *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995); *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)); *see also* 20 C.F.R. §§ 404.1527(a)(2) ("Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions").

Here, the ALJ discussed the opinions of examining doctors, Dr. Faulder Colby, Ph.D. and Dr. Carl Epp, Ph.D., together and gave them both "little weight." AR. 32. The ALJ noted that, for example, Dr. Colby opined that plaintiff suffered from severe limitation in her ability to complete a normal workday/workweek and marked limitations

in her abilities to perform activities within a schedule and maintain regular attendance. *Id.* (citing AR. 358).

First, when rejecting these medical opinions, the ALJ relied on a finding that "these opinions are inconsistent with the overall record, which, as discussed above, shows generally normal mental status findings." *Id.* Just before this discussion, the ALJ had noted some normal mental status examination ("MSE") findings observed by treating doctor, Dr. Jeffrey Nelson, M.D., including "normal concentration, attention, memory, [and] orientation." *Id.* Although the ALJ also indicated there was normal speech, such finding is contrary to Dr. Nelson's note that plaintiff had slow speech, demonstrating cognitive slowing. *See* AR. 745. Even if the ALJ's finding that Dr. Nelson observed normal concentration, attention, memory, and orientation is supported by substantial evidence in the record, the ALJ does not explain how these particular aspects of the MSE are inconsistent with a severe limitation in the ability to complete a normal workday/workweek and marked limitations in the abilities to perform activities within a schedule and maintain regular attendance. *See* AR. 358. It is not clear how normal concentration, attention, memory and orientation are inconsistent with limitations on performing work activities within a schedule, and maintaining regular full time work attendance for full eight hour days and 40 hour weeks. *See id*. (the medical opinions of limitations are "based on the individual's ability to sustain the activity over a normal workday and workweek on an ongoing, appropriate, and independent basis"). The findings noted by the ALJ do not appear relevant necessarily to persistence or pace, for example.

When an ALJ seeks to discredit a medical opinion, she must explain why her own interpretations, rather than those of the doctors, are correct. *Reddick, supra*, 157 F.3d at 725 (citing *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)); *see also Blankenship v. Bowen*, 874 F.2d 1116, 1121 (6th Cir. 1989) ("When mental illness is the basis of a disability claim, clinical and laboratory data may consist of the diagnosis and observations of professional trained in the field of psychopathology. The report of a psychiatrist should not be rejected simply because of the relative imprecision of the psychiatric methodology or the absence of substantial documentation") (quoting *Poulin v. Bowen*, 817 F.2d 865, 873-74 (D.C. Cir. 1987)).

Furthermore, it is not clear how these "normal" MSE findings were assessed, as Dr. Nelson simply indicated, for example, that plaintiff's orientation, long term memory and short term memory were "grossly intact." AR. 745. In contrast, Dr. Colby performed a formal MSE, opined that plaintiff's memory and concentration were not within normal limits, and furthermore indicated exactly what his opinions regarding these limitations were based on:

> Memory: [Taken from the Luria-Nebraska Neuropsychological Battery, Form-I, the first three words are, MAN, BACK, DOOR, and the second three are LIGHT, STOVE, CAKE. The first sentence is, 'The sun rises in the East,' and the second is, 'In May, the apple trees blossom.' Immediate recall was given right after the respective recitations, and delayed recall is given 10-12 minutes later. There are no objective scoring criteria for delayed recall.] On learning trials, the Claimant recited all the words in both sentences, for perfect registration. On immediate recall, she remembered none of the first three words, none of the second three words, and neither of the sentences. Using Luria-Nebraska scoring criteria (where "0" is a perfect score and "2" is impaired), she earned scores of two (2) for both the words and the

> sentences. On delayed recall, she remembered none of the words and neither sentence.
>
> . . .
>
> Concentration: She spelled 'world' forward and backward on her first tries. Counting aloud from 1-25 (Oral Trails A) took her 8.19 seconds with one error, putting her at the 4th percentile (borderline range) for persons in their early 30s (Ricker & Axelrod, 1994). She then recited the alphabet in 5.71 seconds with no errors. She completed none out of six differences on her first tries within 30 seconds on serial 7 subtractions, starting from 100, and none out of six differences on her first tries within 45 seconds on serial 13 subtractions, starting from 100. Using scoring criteria from the Luria-Nebraska, she earned scores of two (2) for both serial 7 and serial 13 subtractions. Then, she completed two out of six differences on her first try within 30 seconds on serial three subtractions, starting from 40. There are no objective scoring criteria for serial three subtractions. The sample for Oral Trails B took her 4.59 seconds, and the full Oral Trails B took her 180 seconds with one error [she got to "I" by 48 seconds without an error and then could not remember that she was supposed to go to "13," next]; this put her at less than the 1st percentile for persons in their 30s and early 80s (Ricker & Axelrod, 1994).

AR. 359-60.

Regarding the ALJ's finding of "normal" MSE results, the Court also notes that the ALJ acknowledged that plaintiff's counselor "Marybeth Bently, BSW, often noted that the claimant had a flat affect, poor memory, and slow motor activity and was irritable." AR. 29 (internal citations omitted). Plaintiff also directed the Court to numerous citations from the record demonstrating abnormal mental status findings, and the Court finds persuasive plaintiff's contention that "the nature of bipolar disorder has to be considered because bipolar disorder presents on an episodic basis." Dkt. 11, p. 11.

Therefore, the Court concludes that the ALJ's finding that Dr. Colby's opinions regarding plaintiff's limitations on performing work activities within a schedule and maintaining regular full time work attendance are inconsistent with Dr. Nelson's

"normal" MSE findings regarding memory, concentration and orientation does not entail specific and legitimate rationale based on substantial evidence in the record for failing to credit fully Dr. Colby's opinions. *See Lester*, 81 F.3d at 830-31 (citing *Andrews*, 53 F.3d at 1043; *Murray*, 722 F.2d at 502).

The ALJ also relied on a finding that the opinions of the examining doctors are heavily based on plaintiff's subjective self-report, however, this finding is not based on substantial evidence in the record as a whole.

According to the Ninth Circuit, "[an] ALJ may reject a treating physician's opinion if it is based 'to a large extent' on a claimant self-reports that have been properly discounted as incredible." *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (quoting *Morgan v. Comm'r. Soc. Sec. Admin.*, 169 F.3d 595, 602 (9th Cir. 1999) (citing *Fair v. Bowen*, 885 F.2d 597, 605 (9th Cir. 1989))). This situation is distinguishable from one in which the doctor provides his own observations in support of his assessments and opinions. *See Ryan v.Comm'r of Soc. Sec. Admin.*, 528 F.3d 1194, 1199-1200 (9th Cir. 2008) ("an ALJ does not provide clear and convincing reasons for rejecting an examining physician's opinion by questioning the credibility of the patient's complaints where the doctor does not discredit those complaints and supports his ultimate opinion with his own observations"); *see also Edlund v. Massanari*, 253 F.3d 1152, 1159 (9th Cir. 2001). According to the Ninth Circuit, "when an opinion is not more heavily based on a patient's self-reports than on clinical observations, there is no evidentiary basis for rejecting the opinion." *Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014) (citing *Ryan v. Comm'r of Soc. Sec. Admin.*, 528 F.3d 1194, 1199-1200 (9th Cir. 2008)).

Although the ALJ made the conclusory finding that Dr. Colby's opinions are heavily based on plaintiff's self-reports, the ALJ did not cite any evidence substantiating this finding. *See* AR. 32. Indeed, as the Court just cited above, Dr. Colby performed a formal MSE and clearly indicated that his opinions regarding plaintiff's abnormal memory and concentration abilities was based on specific objective testing results. As the ALJ did not point to any evidence that Dr. Colby relied heavily on plaintiff's self-reports, and as Dr. Colby explicitly indicated reliance on his formal MSE and the resultant objective evidence derived therein for some of his opinions, the Court concludes that the ALJ's finding that Dr. Colby relied heavily on plaintiff's subjective reports is not a finding based on substantial evidence in the record as a whole.

The Court notes that "experienced clinicians attend to detail and subtlety in behavior, such as the affect accompanying thought or ideas, the significance of gesture or mannerism, and the unspoken message of conversation. The Mental Status Examination allows the organization, completion and communication of these observations." Paula T. Trzepacz and Robert W. Baker, The Psychiatric Mental Status Examination 3 (Oxford University Press 1993). "Like the physical examination, the Mental Status Examination is termed the *objective* portion of the patient evaluation." *Id.* at 4 (emphasis in original).

The Mental Status Examination generally is conducted by medical professionals skilled and experienced in psychology and mental health. Although "anyone can have a conversation with a patient, [] appropriate knowledge, vocabulary and skills can elevate the clinician's 'conversation' to a 'mental status examination.'" Trzepacz and Baker, *supra*, The Psychiatric Mental Status Examination 3. A mental health professional is

trained to observe patients for signs of their mental health not rendered obvious by the patient's subjective reports, in part because the patient's self-reported history is "biased by their understanding, experiences, intellect and personality" (*id.* at 4), and, in part, because it is not uncommon for a person suffering from a mental illness to be unaware that her "condition reflects a potentially serious mental illness." *Van Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996) (citation omitted).

The ALJ did not explain the basis for his finding regarding Dr. Colby's heavy reliance on subjective self-reports in light of the explicit objective evidence derived from the MSE by this trained psychological doctor. The ALJ also did not explain the basis for the finding that Dr. Epp relied heavily on plaintiff's self-report, and he also conducted a MSE. *See* AR. 891-92.

For the reasons stated and based on the overall record, the Court concludes that the ALJ erred when evaluating the medical evidence provided by Dr. Colby, and that Dr. Epp's opinion requires further evaluation. Furthermore, the Court concludes that the error is not harmless.

The Ninth Circuit has "recognized that harmless error principles apply in the Social Security Act context." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (citing *Stout v. Commissioner, Social Security Administration*, 454 F.3d 1050, 1054 (9th Cir. 2006) (collecting cases)). Recently the Ninth Circuit reaffirmed the explanation in *Stout* that "ALJ errors in social security are harmless if they are 'inconsequential to the ultimate nondisability determination' and that 'a reviewing court cannot consider [an] error harmless unless it can confidently conclude that no reasonable ALJ, when fully

crediting the testimony, could have reached a different disability determination.'" *Marsh v. Colvin*, 792 F.3d 1170, 1173 (9th Cir. 2015) (citing *Stout*, 454 F.3d at 1055-56). In *Marsh*, even though "the district court gave persuasive reasons to determine harmlessness," the Ninth Circuit reversed and remanded for further administrative proceedings, noting that "the decision on disability rests with the ALJ and the Commissioner of the Social Security Administration in the first instance, not with a district court." *Id.* (citing 20 C.F.R. § 404.1527(d)(1)-(3)).

Dr. Colby opined that plaintiff suffered from severe limitation in her ability to complete a normal workday/workweek and marked limitations in her abilities to perform activities within a schedule and maintain regular attendance. AR. 358. Severe limitation "means the inability to perform the particular activity in regular competitive employment or outside of a sheltered workshop," while marked limitation "means a very significant limitation on the ability to perform one or more basic work activity." AR. 357. If plaintiff is not able to complete a normal workday/workweek, it is highly likely that she is disabled. Therefore, the Court cannot conclude with confidence "'that no reasonable ALJ, when fully crediting [Dr. Colby's opinion], could have reached a different disability determination.'" *Marsh*, 792 F.3d at 1173 (citing *Stout*, 454 F.3d at 1055-56).

Because the ALJ erred when evaluating the medical evidence, the Court concludes that all of the medical evidence should be evaluated anew following remand of this matter, including the medical opinion offered by plaintiff's treating physician, Dr. Jeffrey Nelson, whose opinion plaintiff contends was rejected improperly by the ALJ. However, the Court notes that there is some support for the ALJ's finding that Dr. Nelson's notes

show that plaintiff often exhibited findings that Dr. Nelson opined to be "grossly intact," such as her concentration and memory. Therefore, the Court concludes that there are sufficient ambiguities in this record to warrant further administrative review, as opposed to warranting a direction from this Court for the Administration to award benefits. As stated by the Ninth Circuit, regarding the question of whether to award benefits or to remand for further proceedings:

> Second, we turn to the question whether [or not] further administrative proceedings would be useful. In evaluating this issue, we consider [if] the record as a whole is free from conflicts, ambiguities, or gaps, [if] all factual issues have been resolved, and [if] the claimant's entitlement to benefits is clear under the applicable legal rules.

*Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1103-04 (9th Cir. 2014) (citations omitted). The Court concludes that further administrative proceedings would be useful. *See id.; see also* AR. 30 (ALJ's discussion of Dr. Sylvia Thorp, Ph.D.'s opinion).

**(2) Whether the ALJ's light residual functional capacity ("RFC") is supported by substantial evidence.**

The Court already has concluded that the ALJ erred in reviewing the medical evidence and that this matter should be reversed and remanded for further consideration, *see supra*, section 1. Therefore, as a necessity, plaintiff's RFC should be assessed anew following remand of this matter.

## CONCLUSION

The ALJ erred when evaluating the medical opinion of Dr. Colby. Therefore, based on this reason and the relevant record, the Court **ORDERS** that this matter be

**REVERSED** and **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) to the Acting Commissioner for further consideration consistent with this order.

**JUDGMENT** is for plaintiff and the case shall be closed.

Dated this 10th day of July, 2017.

J. Richard Creatura
United States Magistrate Judge